UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS J. RASMUSSEN, et al.,

    Plaintiffs,

v.

                                     Case No. 24-2081-TC-BGS

FOUNDATION FOR AFFORDABLE HOUSING,

    Defendant.

## MEMORANDUM AND ORDER DENYING MOTION TO COMPEL

This matter comes before the Court on Defendant, Foundation for Affordable Housing's, motion to compel. Doc. 117. Plaintiffs, Thomas Rasmussen, Daniel Stechschulte, and Mark Rasmussen, oppose the motion arguing that the discovery requests seek irrelevant information and are not proportional to the needs of the case. Doc. 124. They also seek attorneys' fees in connection with the motion pursuant to Fed. R. Civ. P. 37(a)(5)(B). For the reasons stated herein, the motion is **DENIED**.

### I. Background Facts

The Plaintiffs in this case are Thomas Rasmussen, Daniel Stechschulte, and Mark Rasmussen, all of whom are non-managing, individual investors. They invested in Cross Creek Apartment Holdings, LLC (the "Company") in 2009. The Plaintiffs collectively own a 99% interest in the Company as investor members. *See* Doc. 1 at ¶ 10-13. The Cross Creek Apartment Complex ("the Apartment Complex") is owned by the Company and is part of the federal government's Low Income Housing Tax Credit ("LIHTC") program. Located in Beaufort, South Carolina, the Apartment Complex is a 7-building complex with 144 apartment units. *Id.* ¶ 2. The LIHTC program allows investors to receive tax credits and benefits, which Plaintiffs testified were key

1

features of their investment. Defendant is a Nebraska non-profit corporation and serves as the Managing Member of the Company and holds a 1% interest. *Id.* ¶ 13. Defendant is responsible for the management and operation of the Company.

On December 31, 2009, the parties entered into an investment agreement which is governed by the Operating Agreement. *Id.* ¶ 5. The Operating Agreement outlines the rights and obligations of the parties, including the distribution of net proceeds from any sale of the Company's assets. *Id.* ¶ 13. The complaint alleges that pursuant to section 4.02(b) of the Operating Agreement, the Plaintiffs are entitled to a 50% share of the net proceeds from a sale of the Apartment Complex, with the remaining 50% allocated to the Managing Member. *Id.* ¶ 5. This provision was allegedly a significant factor in the Plaintiffs' decision to invest in the Company. *Id.* ¶ 6.

On September 12, 2022, the Company closed on a sale of the Apartment Complex for $20,750,000, resulting in net sale proceeds of $7,045,563.29. *Id.* ¶ 82-83. The sale was allegedly conducted without prior notice to or consent from the Plaintiffs, who were informed of the sale only through a letter dated December 12, 2022. *Id.* ¶ 72. The Plaintiffs allege that the Defendant breached the Operating Agreement by failing to distribute the net proceeds from the sale of the Apartment Complex in accordance with Section 4.02(b), which they claim should govern the distribution as a pre-dissolution Capital Event. Instead, the Defendant distributed the proceeds as if they were liquidation proceeds under Section 4.03 of the Operating Agreement, which the Plaintiffs argue was improper because the sale occurred prior to the dissolution of the Company. *Id.* ¶ 84-85. As a result, the Plaintiffs received $84,890 each, significantly less than the $3,500,000 they claim they were entitled to collectively. *Id.* ¶ 8, 79. Defendant argues that Section 4.03 should govern, as it pertains to distributions upon the termination of the company, ensuring compliance with the Internal Revenue Code ("IRC") requirements for substantial economic effect.

On March 8, 2024, Plaintiffs brought suit against the Defendant for alleged breaches of contract and fiduciary duties.  Plaintiffs allege that Defendant breached its fiduciary duties by failing to account for and distribute the net proceeds properly, and by not notifying or seeking consent from Plaintiffs before the sale.  They assert that these actions had a material adverse effect on their interests and violated the Defendant's duty of loyalty and care under the South Carolina Uniform Limited Liability Company Act.  The claims are specifically as follows: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of obligation of good faith and fair dealing; and (4) violation of Sought Carolina Limited Liability Act of 1996.  Plaintiffs seek damages for the alleged breaches and indemnification for any losses incurred due to the Defendant's actions.

Defendant denies the allegations and asserts that the distribution of proceeds was conducted in accordance with the Operating Agreement, specifically under Section 4.03, as the sale constituted a dissolution and liquidation of the Company.  *See* Doc. 9.  Defendant also contends that it had no obligation to notify or seek consent from Plaintiffs for the sale.  *Id.* ¶ 76.

Plaintiffs filed a motion for judgment on the pleadings on June 14, 2024.  *See* Doc. 27.  The motion, in part, seeks to resolve the dispute over the interpretation and application of the Operating Agreement, particularly concerning the distribution of proceeds from the sale of the Apartment Complex and the fiduciary duties owed by the Defendant to Plaintiffs.

The scheduling order was entered on June 5, 2024, and was subsequently amended on October 1, 2024.  On February 11, 2025 (the day before the discovery deadline), the parties notified the Court that the Defendant discovered a mistake had been made in a prior tax return filing relating to the Company.  The identification of this mistake caused the schedule to be upended.

On March 7, 2025, the Court convened a status conference with the parties.  The Court found, by agreement of the parties, that a short stay of discovery was appropriate pending a ruling

3

Case 2:24-cv-02081-TC-BGS   Document 129   Filed 06/25/25   Page 4 of 11

on the motion for judgment on the pleadings. That stay did not apply to the present dispute – which was at issue at the time discovery was stayed.

The Court subsequently held a pre-motion discovery conference on April 15, 2025. At issue were Plaintiffs' objections to a variety of discovery requests seeking personal financial information for the prior fifteen (15) years, including adjusted gross income(s), marginal tax rate(s), taxable income(s), total value of tax credits, and the total value of passthrough losses and deductions. Defendant contends the requested information is relevant and proportional to the needs of the case because if Plaintiffs' interpretation of the Operating Agreement is correct, then Plaintiffs received tax benefits they would not have otherwise received, as Section 4.02 does not comply with IRC Section 704. Therefore, Defendant argues that Plaintiffs' damages should be reduced by the value of the tax benefits they received, thereby making information from their personal tax returns relevant. Plaintiffs argue the requested information is not relevant or proportional to the needs of the case. Despite attempts to resolve the dispute through good-faith conferral efforts and a pre-motion discovery conference, the parties were unable to reach an agreement. The Court set the deadline to file a motion to compel to May 8, 2025. Defendant timely filed its motion to compel. Briefing is now complete, and the Court is prepared to rule.

**II.    Legal Standard**

Feb. R. Civ. P. 26(b) governs the scope of discovery and states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

To be discoverable, the information sought must be nonprivileged, relevant, and proportional to the needs of the case. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440,

4

at *2 (D. Kan. Jan. 11, 2018). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

Pursuant to Fed. R. Civ. P. 37, a party may move the Court for an order compelling answers to interrogatories and requests for production of documents. If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011). *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. *Id.* Relevancy determinations are generally made on a case-by-case basis. *Id.*

### III. Analysis

Defendant moves to compel the Plaintiffs to respond to its second set of interrogatories, nos. 8, 9, 15, 17, and 18, and second set of requests for production, nos. 19, 25, 26, and 27. Specifically, it requests that the Court overrule Plaintiffs' objections to the discovery requests and compel responses and document production. The interrogatories in dispute are as follows:

> **Interrogatory No. 8**: List the total amount of gross, unadjusted income each Plaintiff reported on their tax returns for each tax year from 2009 through 2024.

> **Interrogatory No. 9**: List marginal tax rate applicable to each Plaintiff for each tax year from 2009 through 2024.
>
> **Interrogatory No. 15**: List the total amount of taxable income each Plaintiff reported on their tax returns for each tax year from 2009 through 2024.
>
> **Interrogatory No. 17**: List the total value of the tax benefits received by each Plaintiff for each tax year from 2009 through 2024 as a result of the Company's tax credits allocated to each of them.
>
> **Interrogatory No. 18**: List the total value of the tax benefits received by each Plaintiff for each tax year from 2009 through 2024 as a result of the Company's pass-through losses and deductions allocated to each of them.

The requests for production in dispute are as follows:

> **Request for Production No. 19**: Produce documents sufficient to reflect the total amount of gross, unadjusted income each Plaintiff reported for each tax year from 2009 through 2024.
>
> **Request for Production No. 25**: Produce documents sufficient to identify the amount of taxable income reported by each Plaintiff for each tax year from 2009 through 2024.
>
> **Request for Production No. 26**: Produce documents sufficient to identify the value to each Plaintiff of tax credits received by each Plaintiff from 2009 through 2024.
>
> **Request for Production No. 27**: Produce documents sufficient to identify the value to each Plaintiff of passthrough items of deductions and losses received by each Plaintiff from 2009 through 2024.

Plaintiffs object on several grounds to include that the discovery requests seek irrelevant information and are overbroad, not proportional to the needs of the case, vague, and unduly burdensome.[1] Defendant does not address each discovery request individually. Instead, it groups them together and argues that the discovery requests are relevant and proportional to the needs of the case. For efficiency's sake, the Court will also analyze the discovery requests together and consider the parties' arguments as presented.

---

[1] Plaintiffs argue in their brief that "Defendant lost its opportunity to pursue Plaintiffs' tax returns ten months ago, when Defendant failed to do so under Kan. R. Prac. 37.1." Doc. 124, at 9. This does raise some concerns, but they provide no further support for this argument. Therefore, the Court will not address it in any further detail and remain focused on the merits of the dispute.

The Court notes at the outset that it is not entirely clear what theory Defendant is relying on in pursuit of the requested information. It appears to rely on the so-called economic substance doctrine as well as the defense of offset. Throughout the pre-motion process, it pointed to the theory of "offset" that would enable it to reduce its damages by the value of tax benefits received. While Defendant's brief does not make explicitly clear whether it is relying on offset as a legal defense, it is apparent that Defendant is making the argument that the value of tax benefits received by Plaintiffs should be offset by whatever damages may be awarded. *See* Doc. 118, at 8-9 (relying on the *Fleischer* case which applies the theory of offset); *id.* at 2 ("In return for their investment, investors receive what Plaintiffs admit is the 'key feature of the LIHTC program," that is, a "generous dollar-for-dollar tax liability offset.'") (emphasis added).

Therefore, it is clear that Defendant is arguing, at least impliedly, that it should be able to offset or deduct received tax benefits from awarded damages. There are several problems with Defendant's position that the discovery requests seek relevant information. The Court will first address the theory of offset and then the economic substance doctrine.

    **a. Offset**

First, the District of Kansas has strongly suggested that offset is an affirmative defense that needs to be pled. *See, e.g., Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1742163, at *4 (D. Kan. May 24, 2007) ("This alone indicates that defendants' initial burden of proof as to an offset claim is an affirmative defense to be plead pursuant to Rule 8(c)"); *see also, e.g., U.S. Bank, N.A. v. Sierra Bldg. Prods., Inc.*, No. 2:11-cv-458 TS, 2012 WL 527623, at *3 (D. Utah Feb. 16, 2012) ("[Defendant's] affirmative defense of offset fails as a matter of law). Rule 8(c) requires defendants to set forth specified affirmative defenses in an answer along with any other matters constituting "an avoidance or affirmative defense." Failure to plead an affirmative defense or raise the issue by way of Rule 12 motion amounts to a waiver of the defense in accordance with Fed. R. Civ. P. 8(c). *Renfro*

*v. City of Emporia, Kan.*, 732 F. Supp. 1116, 1118 (D. Kan. 1990). The Tenth Circuit stated that "[i]f such defenses are not affirmatively pleaded, asserted with a motion under Rule 12(b)(6) or tried by the express or implied consent of the parties, such defenses are deemed to have been waived and may not thereafter be considered as triable issues in the case." *Radio Corp. of Am. v. Radio Station KYFM, Inc.*, 424 F.2d 14, 17 (10th Cir. 1970) (emphasis added).

Here, Defendant has not pled an "offset" defense in its answer or otherwise raised it by way of a Rule 12 motion. Presumably to avoid this issue, it couched its arguments as failing under the economic substance doctrine. While the Court will address that argument in turn, the fact remains that Defendant is seeking a reduction of Plaintiffs' damages in the event their interpretation of the operating agreement is correct. As such, to the extent Defendant relies on offset as an affirmative defense, it is likely waived because it was never plead.

Second, even if offset was properly plead, it would not be a proper vehicle to obtain the information sought in the discovery requests. In its brief, Defendant cites the *Fleischer* case which held that

> . . . if the defendants can show that the value of the [transaction] was actually enhanced by income tax benefits which could be immediately realized, those benefits should not be ignored in calculating the damages [plaintiff] actually suffered from the conduct in issue . . . Given that there is evidence that the transaction was motivated by the [plaintiff's] desire to shelter from tax liability certain income of [plaintiff] and specifically to realize certain tax benefits from the then existing losses . . . it is reasonable to offset the amount of injury plaintiff claims to have suffered by the anticipated and realized tax benefits of that investment. To ignore tax benefits that the plaintiff bargained for and received as a result of the investment could permit the plaintiff to obtain unreasonable damages.

Doc. 118, at 8-9 (citing *Resol. Tr. Corp. v. Fleischer*, 880 F. Supp. 1446, 1453 (D. Kan. 1995). The court went on to hold that a party may only offset benefits that are tied to the breaching party's tortious misconduct or breach of contract. *Resol. Tr. Corp. v. Fleischer*, 880 F. Supp. 1446, 1451-53 (D. Kan. 1995).

8

Here, Plaintiffs allege that Defendant breached the contract when it improperly sold the property and failed to disburse 50% of the sale proceeds to Plaintiffs. Defendant argues that the requested financial information is relevant to damages and that should Plaintiffs' interpretation of the contract succeed, then it would be entitled to offset prior tax credits and benefits. Specifically, Defendant seeks fifteen years of information related to the "total value of tax benefits received by each Plaintiff . . . as a result of the Company's tax credits allocated to them" and the "total value of the tax benefits received . . . as a result of the Company's pass-through losses and deductions allocated to each of them." Defendant fails to set forth a cognizable legal argument that previously recognized tax benefits for a span of fifteen (15) years are tied to the alleged breach of contract and whether Plaintiffs are owed 50% of the underlying sale proceeds. Further, it is unclear how the requested information could be relevant given that the sale of the property occurred in 2022, and Defendant fails to explain or address how Plaintiffs' adjusted gross income, marginal tax rates, or taxable income, have any bearing on a potential damage award as to whether it would be subject to "offset" prior tax credits and benefits. Accordingly, the Court finds that Defendant has not met its burden to establish that the requested information is relevant as it relates to its "offset" theory.

### b. Economic Substance Doctrine

Defendant largely relies on the economic substance doctrine—an IRS rule—in support of its motion to compel. "The economic substance doctrine allows courts to enforce the legislative purpose of the Internal Revenue Code by preventing taxpayers from reaping tax benefits from transactions lacking in economic reality." *Southgate Master Fund, LLC ex rel. Montgomery Cap. Advisors, LLC v. United States*, 651 F. Supp. 2d 596, 653-54 (N.D. Tex. 2009). "The doctrine of economic substance becomes applicable, and a judicial remedy is warranted, where a taxpayer seeks to claim tax benefits, unintended by Congress, by means of transactions that serve no economic purpose other than tax savings." *Id.* (citing *Yosha v. Comm'r*, 861 F.2d 494, 498-99 (7th Cir. 1988)).

Here, the Court is not persuaded that this IRS rule has any application to the discovery requests at issue. It is a tax law principle typically applied by the IRS or in tax court proceedings, not as a damages defense in contract litigation. The Defendant's theory for offsetting damages via the economic substance is novel to this District and it provides no coherent argument for how it can be used as a basis for the court to strip another party of damages. It makes numerous statements that the prior allocations of tax benefits to Plaintiffs lack "substantial economic effect." Doc. 118, at 9. However, Defendant does not provide support for how it has a right to strip away contractually received tax benefits based on other economic benefits such as sale proceeds. Even accepting Defendant's unsupported assertion that prior tax allocations lacked substantial economic effect, this would be a matter between Plaintiffs and the IRS, not grounds for reducing contractual damages in this litigation.

Perhaps more importantly, this doctrine does not appear to be an independent basis to reduce another party's damages. Defendant provides no authority demonstrating that the economic substance doctrine can be invoked as an affirmative defense to reduce damages in breach of contract cases. Put another way, Defendant is still pursuing offset. It is merely justifying offsetting damages by attempting to apply an IRS rule. Thus, Defendant's arguments fail for the same reasons mentioned above: the defense was never pled and is not tied to the alleged breach of contract. To the extent Defendant is attempting to assert this economic substance defense, it similarly was never pled. Defendant has failed to meet its burden that the discovery requests are relevant to the claims

10

in this case. Given that this issue is determinative, it need not address Plaintiffs' proportionality arguments.[2] Defendant's motion to compel is denied.[3]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel, Doc. 117, is **DENIED**.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs related to this motion.

**IT IS SO ORDERED.**

Dated June 25, 2025, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge

---

[2] The Court notes that very little briefing was dedicated to proportionality and does not change the Court's analysis herein.

[3] Plaintiffs request that the Court award attorneys' fees incurred in opposing the motion pursuant to Fed. R. Civ. P. 37(a)(5)(B). There are not circumstances present to justify awarding attorney's fees in this matter. Accordingly, Plaintiffs' request for attorney's fees is denied.