**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-02081-TC-BGS

---

THOMAS J. RASMUSSEN, ET AL.,

*Plaintiffs*

v.

FOUNDATION FOR AFFORDABLE HOUSING,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiffs Thomas Rasmussen, Mark Rasmussen, and Daniel Stechschulte sued the Foundation for Affordable Housing, alleging that it improperly sold an apartment complex the parties owned jointly. Doc. 1. Plaintiffs move for judgment on the pleadings. Doc. 27. For the following reasons, Plaintiffs' motion is denied.

**I**

**A**

A motion for judgment on the pleadings is appropriate "[a]fter the pleadings are closed," which means "upon the filing of a complaint and answer." *Progressive Cas. Ins. Co. v. Estate of Crone*, 894 F. Supp. 383, 385 (D. Kan. 1995). When ruling on a motion under Rule 12(c), the court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in that party's favor." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1171 (10th Cir. 2016). Where, as here, the plaintiff moves for judgment on the pleadings, that means the court "should accept as true all factual allegations in the answer and all factual allegations from the complaint that the defendant admits or fails to deny." *United States v. Zazi*, 356 F. Supp. 3d 1105, 1114 (D. Colo. 2018); *see Martin Marietta*, 810 F.3d at 1171; *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th

1

Cir. 2012). Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Colony Ins.*, 698 F.3d at 1228 (quotation marks omitted). As with a motion to dismiss, the plaintiff's complaint must plead a plausible claim. *Martin Marietta*, 810 F.3d at 1171.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 556(2007)). A claim need not be probable to be considered plausible. *Id.* But the facts, viewed in the light most favorable to the claimant, must adduce "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

**1.** This case is largely a simple contract dispute. But it arises as part of the operation and dissolution of a company created to take advantage of the Low Income Housing Tax Credit (LIHTC) program. *See generally* 26 U.S.C. § 42; Andrew Zack Blatter & Elena Marty-Nelson, *An Overview of the Low Income Housing Tax Credit*, 17 U. BALT. L. REV. 253 (1988); *SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872 (6th Cir. 2022). A description of that federal program will help contextualize the parties' contractual dispute.

Congress introduced the LIHTC program in 1986. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 252, 100 Stat. 2085 (1986). The program was intended to increase the supply of available housing for low-income individuals. Doc. 1 at ¶ 22. It gives developers a dollar-for-dollar tax credit to offset their tax liability. *SunAmerica*, 33 F.4th at 875. In exchange, developers must rent out the subject property at certain rent limits for a fifteen-year compliance period or for thirty if the project began after 1990. *Id.* Often, developers enter into partnerships

as general partners with investor banks or other financial entities who have large tax liabilities, with the investors providing capital and keeping the tax credits. *Id.*

**2.** The parties' dispute concerns a company involved in the operation and ultimate disposition a 7-building apartment complex in Beaufort, South Carolina.[1] Doc. 1 at ¶ 2. That complex, known as Cross Creek Apartments, was owned by a limited liability company known as Cross Creek Apartment Holdings, LLC. *Id.* at ¶ 3. That company was governed by an Operating Agreement. Doc. 1 at ¶ 5; *see* Doc. 1-1.

The members of that company are the litigants in this suit. In particular, the plaintiffs are Thomas Rasmussen, Daniel Stechschulte, and Mark Rasmussen. Doc. 1 at ¶¶ 10–12. The sole defendant is the Foundation for Affordable Housing, a Nebraska non-profit corporation. *Id.* at ¶ 13. Plaintiffs allege that the Foundation is the managing member of the apartment holding company and that it only owns only 1% of the company. *Id.* at 13. The three individual plaintiffs each allegedly owns a 33% share in the company. *Id.* at ¶¶ 10–12.

The basics of this dispute are contested. *Compare* Doc. 1; *with* Doc. 9. But the following generally describes the parties' relationship.

In September 2022, the holding company sold Cross Creek Apartments to a third party, allegedly a few months after the LIHTC compliance period ended. Doc. 1 at ¶¶ 50, 69, 71; *but see* Doc. 9 at ¶ 69 (the Foundation's disagreement about when the compliance period ended). It is the disposition of those sale proceeds that is at the core of this dispute.

The Foundation sent Plaintiffs a letter informing them that the holding company had sold the apartment complex and that "since Cross Creek has no remaining assets, the entity *is being dissolved*." Doc. 1-3 at 2 (emphasis added); Doc. 1-3 at 3 (noting that the Foundation "will file the Articles of Termination . . . to effectuate the dissolution"); Doc. 1 at ¶ 73. The letter further stated that the proceeds of the sale were allocated to Plaintiffs pursuant to Section 4.03 of the Operating Agreement and that the company was dissolved pursuant to Section

---

[1] All facts pleaded by the Foundation, the non-moving party, are accepted as true. *See Martin Marietta*, 810 F.3d at 1171. Moreover, all reasonable inferences from the facts are viewed in the Foundation's favor. *Id.*

3

1.05 of the Operating Agreement. Doc. 1-3 at 2; Doc. 1 at ¶¶ 74, 75. The Foundation then distributed the proceeds to Plaintiffs under Section 4.03. Doc. 1 at ¶ 84. The Foundation did not consult or inform Plaintiffs about the sale. *Id.* at ¶¶ 76, 77.

There is strong disagreement among the parties about whether the Foundation's disposition of the sale proceeds was proper. The Foundation concluded that it had to distribute the proceeds of the sale as it did based on the language of Section 1.05 of the Operating Agreement. Doc. 1 at ¶ 58. That provision reads, in pertinent part, as follows:

> Section 1.05. Term and Dissolution.
>
> (a) The Company shall continue in full force and effect until December 31, 2060, except that the Company *shall be dissolved* and its assets liquidated prior to such date upon:
>
> > (i) A sale or other disposition of all or substantially all of the assets of the Company;
> >
> > (ii) The Withdrawal of a Managing Member of the Company, if the Company has not been continued pursuant to Section 10.02 hereof or reconstituted pursuant to Section 10.03 hereof;
> >
> > (iii) An election to dissolve the Company made in writing by the Managing Member; or
> >
> > (iv) An occurrence of any other event which results in a dissolution of the Company pursuant to the Uniform Act.

Doc. 1-1 at § 1.05 (emphasis added).

The Foundation read Section 1.05(a)(i)'s command that the company "shall be dissolved" upon a sale of all its assets as effecting an automatic dissolution. Doc. 1 at ¶ 75. In other words, the company immediately dissolved the moment the property transfer occurred. Based on this reading, the Foundation distributed the sale proceeds pursuant to Section 4.03, the provision that directs a distribution

4

mechanism that applies upon dissolution. That provision declares as follows:

> Section 4.03. Termination Distributions.
>
> (a) Upon dissolution and termination of the Company . . . the remaining assets of the Company (or the proceeds of sales or other dispositions in liquidation of the Company Assets, as may be determined by the remaining or surviving Managing Member) *shall be distributed* pro rata to the Members in accordance with their respective positive Capital Account balances after taking into account all Capital Account adjustments for the year.

Doc. 1-1 at 28 (emphasis added). The net effect of this distribution is that Plaintiffs each received roughly $84,000 from the $7 million that the company netted from the sale, while the Foundation received roughly $6.7 million. Doc. 1 at ¶¶ 79, 83, 85.

Plaintiffs read Section 1.05 differently. They interpret Section 1.05(a)(i)'s "shall be dissolved" language in the future tense, such that the dissolution must occur in the future but is not automatic or immediate as of the moment the sale of the apartment complex closed. Doc. 1 at ¶¶ 59, 64, 65. Thus, Plaintiffs contend that the Foundation should have distributed the sale proceeds pursuant to Section 4.02(b) of the Operating Agreement. *Id.* at ¶ 55. That section lays out a distribution scheme that applies prior to dissolution and reads, in pertinent part, as follows:

> Section 4.02. Cash Distributions Prior to Dissolution
>
> . . .
>
> (b) *Distributions of Net Proceeds*. Prior to dissolution of the Company, if the Managing Member shall determine from time to time that Net Proceeds are available for distribution from a Capital Event, such Net Proceed shall be applied or distributed as follows
>
> . . . .

5

Doc. 1-1 at 28. Under that provision, Plaintiffs would collectively receive 50% of the net proceeds of the sale, and the Foundation the other 50%. *Id.* This would have netted Plaintiffs roughly $3.5 million collectively. Doc. 1 at ¶ 8.

**3.** Plaintiffs filed suit concerning the dispute over the distribution of these sale proceeds. Doc. 1. Their Complaint asserts four causes of action premised on South Carolina law.[2] *Id.* at ¶ 7. Plaintiffs allege that the Foundation breached the Operating Agreement, breached its fiduciary duties, violated South Carolina law requiring consent, and acted contrary to the duty of good faith and fair dealing. *Id.* at ¶¶ 96, 111, 115, 130. In its Answer, the Foundation largely acknowledges many basic features of the parties' relationship but contests the details. *See generally* Doc. 9.

Plaintiffs now move for partial entry of judgment on the pleadings. Doc. 27. As to Count I, they assert entitlement to judgment as a matter of law because the Operating Agreement is unambiguous and the Foundation's admitted distribution of the sale proceeds violated it. Doc. 28 at 14. They further request judgment on the breach of fiduciary duty claim, Count II, arguing that the Foundation breached its fiduciary duties by selling the apartment complex without their consent and by distributing the proceeds improperly. *Id.* at 16. And they request judgment that the Foundation should pay for their attorney's fees pursuant to Section 6.04(b) of the Operating Agreement, which sets out that the Foundation must indemnify them for any loss caused by the

---

[2] A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In contract disputes, Kansas applies the law of the state where the contract was made. *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007). Accordingly, South Carolina law governs here. *See* Doc. 1-1 at 7 (Cross Creek's Operating Agreement, which was made in South Carolina). That law arises from state statutes and decisions of a state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

It should be noted that the Operating Agreement contains a forum selection clause establishing "that venue for purposes of resolving any dispute or controversy relating to this Agreement shall be in [South Carolina]." Doc. 1-1 § 13.09. For reasons that are not clear, this suit was filed in Kansas and neither Plaintiffs nor the Foundation seek to invoke the forum selection clause. *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (noting that courts should defer to the plaintiff's choice of forum).

Foundation's breach of the Operating Agreement. *Id.* at 18; *see* Doc. 1-1 at 35.

## II

Plaintiffs, who bear the burden of proof on all claims, seek judgment on the pleadings pursuant to Rule 12(c). To sustain that requested relief, they must clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. Because they have failed to do so, Plaintiffs' motion is denied.

### A

The first problem is that the Plaintiffs, who bear the burden of proof on all claims, moved for judgment as a matter of law after the Foundation filed an Answer that disputes nearly all of Plaintiffs' asserted facts. It is accepted that Rule 12(c) motions' utility is limited to the rare circumstance where the pleadings establish the parties agree on the facts.

> [A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice. The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.

5C Wright & Miller, *Federal Practice & Procedure* § 1367 (3d ed. 2021) (footnotes omitted); *accord Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) ("A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.") (quotation marks omitted).

7

This is not one of those rare circumstances where the parties agree on the basic facts. To the contrary, the Foundation's Answer, as is typical in civil practice, denies practically every assertion from the Complaint. Doc. 9; *see also* Doc. 34 at 3–4 (asserting that the requested relief is improper based on the outstanding factual disputes).

Plaintiffs' assertion that the facts are not actually in dispute because only four of their allegations are material to their motion's success is unpersuasive. *Contra* Doc. 36 at 6 n.6. To the contrary, success on any of their claims depends on dozens of allegations from their Complaint describing the parties' complex relationship, the attached operating agreement, a letter the parties circulated before the litigation commenced, and an affidavit attaching a public record. Doc. 28 at 6–11 nn.5, 6, 8. But even if there were only four principal facts material to the dispute, the Foundation's Answer expressly denied them. *See* Doc. 9 at ¶¶ 42, 55, 71, 77 (denying Plaintiffs' allegations). And the Foundation also denied several other facts that are material to Plaintiffs' claims. *See, e.g., id.* at ¶¶ 10–13 (denying the parties' respective statuses in the company), ¶ 40 (denying that the parties agreed to split the proceeds of a sale of the apartment complex), ¶ 69 (denying when the company's LIHTC compliance period ended). Put simply, there is no basis on which to grant judgment on the pleadings when the material facts are in significant dispute. *Colony Ins.*, 698 F.3d at 1228.

## B

The lingering factual dispute necessarily precludes Plaintiffs from establishing entitlement to judgment as a matter of law. But a word about the legal dispute is—or might be—helpful for later consideration.

This case appears to rise and fall on what the phrase "shall be dissolved" means. Generally speaking the phrase is known as a modal auxiliary verb. *See The Chicago Manual of Style* §§ 5.103, 5.144, 5.145. The verbs "shall be" are auxiliary verbs that modify the principal verb "dissolved," explaining its imperative mood. *Id.* at §§ 5.103, 5.145; *see also id.* at §§ 5.124–5.127 (detailing a verb's three possible moods—indicative, imperative, and subjunctive—and explaining the imperative mood as one that commands). Textually, there is little dispute that dissolution is required. *De Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995); *see also* Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 114 (2012); *Chavez v. Smurfit Kanppa N. Am. LLC*, No. 18-5106, 2018 WL 8642837, at *5 (C.D. Cal. Oct. 17, 2018).

But the crux of the parties' dispute concerns not whether dissolution must occur, but *when*.

Despite the importance of that question, the parties spend very little (if any) time considering how it would be answered under South Carolina law. Generally speaking, South Carolina courts determine how to apply the contract's language by evaluating the text and structure of the language at issue. Where a contract's language is unambiguous, its language alone determines its force and effect. *Ballard v. Admiral Ins. Co.*, 897 S.E.2d 183, 189 (S.C. Ct. App. 2023); *accord Williams v. Gov't Emps. Ins. Co. (GEICO)*, 762 S.E.2d 705, 709 (S.C. 2014). But when a contract is ambiguous, South Carolina courts admit evidence to show the intent of the parties, and the parties' intent becomes a question of fact for the factfinder. *Portrait Homes - S.C., LLC v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 900 S.E.2d 245, 280 (S.C. Ct. App. 2023). A contract is ambiguous "only when it may fairly and reasonably be understood in more ways than one." *Portrait Homes*, 900 S.E.2d at 280; *see also* Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 32 (2012).

And on that question, the parties offered no South Carolina authority. Indeed, it appears that South Carolina has only construed that phrase once in an unrelated context. *See, e.g.*, *Preferred Savings & Loan Ass'n, Inc. v. Royal Garden Resort, Inc.*, 389 S.E.2d 853 (S.C. 1990) (interpreting the phrase in a statutory context). Neither party addresses nor examines that case (or any similar authorities) and its impact on how the phrase "shall be dissolved" would be interpreted by a South Carolina court. At the appropriate time, the parties' briefing should directly address this question based on both the text and structure of the contract under South Carolina law.

### III

For the foregoing reasons, Plaintiffs' Motion for Judgment on the Pleadings, Doc. 27, is DENIED.

It is so ordered.

Date: August 11, 2025                     s/ Toby Crouse
                                          Toby Crouse
                                          United States District Judge

9