## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THOMAS J. RASMUSSEN, et al.,

      Plaintiffs,

      v.

FOUNDATION FOR AFFORDABLE HOUSING,

      Defendant.

Case No. 24-2081-TC-BGS

## MEMORANDUM AND ORDER GRANTING
## MOTION TO AMEND THE COMPLAINT

      This matter comes before the Court on Plaintiffs' motion to amend the complaint and scheduling order. Doc. 161. Plaintiffs Thomas Rasmussen, Daniel Stechschulte, and Mark Rasmussen contend they have shown good cause, and that amendment is appropriate to add an alternative breach of contract theory and to supplement factual allegations concerning the Defendant Foundation for Affordable Housing's distribution methodology and other related transactions. Doc. 163. Defendant opposes the motion, arguing that Plaintiffs have not shown good cause because the information learned was known or discoverable earlier, and that amendment at this stage would be untimely and prejudicial. Doc. 179. For the reasons stated herein, the motion is **GRANTED.**

### I.    Background Facts

      Plaintiffs are investor members of Cross Creek Apartment Holdings, LLC ("Cross Creek" or "the Company") and collectively hold a 99% membership interest. *See* Doc. 1 at ¶ 10-13. Defendant is the Company's managing member and holds the remaining 1% interest. The Company owned Cross Creek Apartments ("the Apartment Complex"), a Low-Income Housing Tax Credit ("LIHTC") project located in Beaufort, South Carolina. *Id.* ¶ 2. The Apartment

1

Complex sold on September 12, 2022. *Id.* ¶ 50. Plaintiffs allege they did not learn of the sale until the Defendant provided notice on December 12, 2022. *Id.* ¶ 72. Plaintiffs further allege that on February 21, 2023, the Defendant issued distribution checks to each Plaintiff in the amount of approximately $84,890 ("the Original Distributions"), which Plaintiffs did not cash. *Id.* ¶ 79. The parties' dispute centers on the Defendant's calculation and distribution of net sale proceeds under the Operating Agreement, including whether the sale should have been distributed under § 4.02(b) (as Plaintiffs contend) or instead under § 4.03's liquidation/termination distribution provisions (as Defendant contends).

The Court sets forth the following background to provide context for the pending motion to amend. The chronology of discovery, motion practice, and subsequent developments is relevant to the Court's evaluation of whether Plaintiffs have shown good cause to seek amendment and whether amendment should be permitted at this stage of the case.

Before this lawsuit began, the parties exchanged communications regarding a housing cooperative owned by the Defendant known as "Ashley Square." *See generally* Doc. 162-3. Those communications addressed the relationship, if any, between Ashley Square and Cross Creek's financing and obligations. In particular, the parties discussed whether and to what extent Cross Creek's debt was cross-collateralized with debt associated with Ashley Square and what that cross-collateralization meant for Cross Creek's accounting and distributions. The Defendant contends that Plaintiffs had information about Ashley Square and cross-collateralization as early as 2023, including through a memorandum of understanding ("MOU") and related correspondence. *See, e.g.*, Doc. 179, at 10. The Defendant further contends that Plaintiffs raised cross-collateralization concerns in a November 2023 letter.

Plaintiffs dispute the extent to which the MOU and related correspondence disclosed the specific information they now seek to plead. They also point to a June 20, 2023, email in which

counsel for Defendant represented that "[t]he debt for Ashley Square is unrelated to Cross Creek and did not affect the calculations for Cross Creek."  Doc. 162-3, at 2.  In Plaintiffs' view, this supports their position that they did not yet have all the information necessary to plead the alternative breach-of-contract theory now asserted in the proposed amended complaint.

The pre-suit communications did not resolve the dispute, and Plaintiffs therefore filed this action on March 8, 2024.  *See* Doc. 1.  The Court entered a scheduling order on June 5, 2024, which was later amended on October 1, 2024.  *See* Docs. 25, 54.  The original scheduling order set the deadline to move to amend the pleadings as July 19, 2024, and the amended scheduling order set the final discovery deadline as February 12, 2025.  The deadline to move to amend the pleadings was not extended or otherwise modified by the amended scheduling order.

Following entry of the scheduling order, the parties engaged in written discovery and noticed depositions.  *See, e.g.*, Docs. 30, 38, 66, 72-78, 84, 87. The Defendant responded to discovery requests and produced documents on a rolling basis throughout 2024.  By October 1, 2024, the Defendant represents it had produced approximately 16,424 pages of documents, along with an additional 5,435 pages obtained from third party Burlington Capital Group.  The Defendant contends this production included materials relevant to the challenged sale and dissolution, the distribution calculations, and Ashley Square-related transactions.

As relevant here, the Defendant points to specific documents it contends put Plaintiffs on notice of the relationship between Ashley Square and Cross Creek during discovery.  These include a mortgage and security agreement produced on June 24, 2024 and an email produced on October 1, 2024 stating that Cross Creek was "taking over the Ashley Square note."  *See* Doc. 179, at 7.  The Defendant also notes that a MOU produced during discovery referenced Ashley Square and that similar information had been exchanged in pre-suit communications.  According to the Defendant,

these materials were sufficient to alert Plaintiffs to the significance of Ashley Square and any potential cross-collateralization issues before the deadline to move to amend.

Plaintiffs do not dispute that these documents were produced but contend they did not disclose the factual connections Plaintiffs now seek to plead. They maintain that earlier productions reflected only that Ashley Square existed and that some relationship between Cross Creek and Ashley Square debt was discussed, without revealing how Ashley Square-related financing intersected with liquidation planning or the methodology used to calculate distributions. Plaintiffs assert that those connections did not become apparent until January 2025, after a dispute regarding communications involving Lutz & Company, P.C., the accounting firm involved in analyzing liquidation planning and distribution calculations. *See, e.g.*, Doc. 163, at 6.

In their motion, Plaintiffs assert that the Defendant "was forced to produce key documents in January 2025," including what Plaintiffs describe as a "plan of complete liquidation and dissolution" and related communications that, in Plaintiffs' view, revealed connections among Cross Creek's liquidation, Ashley Square, and a bridge loan. *Id.* Plaintiffs contend these documents bear on the Defendant's distribution methodology and on Defendant's position that the Ashley Square debt did not affect Cross Creek's distribution calculations. The parties had depositions noticed for February 11 and 12, 2025, following those productions.

On February 11, 2025—one day before the discovery deadline—counsel notified the Court that the Defendant had identified an error in a prior Cross Creek tax return filing that had been used as the basis for the Original Distributions. The disclosure occurred on the eve of the February 11 depositions and led to a stay of the proceedings while the parties addressed corrective tax filings and related issues. *See* Docs. 98, 121, 132. The Court set a status conference for March 7, 2025 to address the tax issue and the path forward. At that time, a motion for judgment on the pleadings was also pending. During the March 7 status conference, the parties agreed that a ruling on that

4

motion was important and that a short stay of proceedings was appropriate while the Court considered it. *See* Doc. 98. Plaintiffs also indicated an intent to seek leave to amend, but the parties and the Court recognized that filing a motion to amend while the motion for judgment on the pleadings remained pending could create procedural complications and potentially moot the pending motion if amendment were granted. Neither party sought that result. The motion for judgment on the pleadings was ultimately denied on August 11, 2025. *See* Doc. 139.

Thereafter, Plaintiffs state that on September 19, 2025, the Defendant advised it was required to file an Administrative Adjustment Request ("AAR") to correct Cross Creek's 2022 tax returns and that the corrective process would involve amended distributions and amended K-1s reflecting amended income allocations. *See* Doc. 162-1, at 34. For case-management purposes, the Court set a December 15, 2025 deadline for Plaintiffs to file any motion to amend, which Plaintiffs met. *See* Doc. 152. Defendant filed the AAR in December 2025 and issued amended distributions to each Plaintiff in the amount of $996,378.01. *Id.*

Plaintiffs' motion to amend, in part, relies on these later developments concerning the tax-return mistake and the Defendant's corrective filings. The proposed amended complaint expands the factual allegations and adds additional theories and remedies tied to (1) Ashley Square/cross-collateralization and related debt-transfer allegations and (2) events following the Defendant's February 2025 disclosure of the tax-return mistake, including the contemplated AAR process, and the December 2025 amended distributions. *See generally* 162-2. Plaintiffs state they seek leave to amend to plead these additional facts, to assert an alternative breach-of-contract claim based on the tax return mistake and amended distributions (Count V), and to seek additional forms of relief, including disgorgement and punitive damages, citing S.C. Code § 15-32-510, et seq.

The Defendant opposes amendment, contending Plaintiffs have not shown good cause under Rule 16 and further arguing that amendment should be denied under Rule 15 based on undue

delay, bad faith, prejudice, and futility. The Defendant argues that Plaintiffs' proposed new allegations—particularly those relating to Ashley Square and cross-collateralization—were known or discoverable earlier. Briefing is now complete, and the Court is prepared to rule.

## II.    Legal Standard

The original scheduling order established a deadline of July 19, 2024 for motions to amend. *See* Doc. 25. Plaintiffs' current motion was filed on December 15, 2025—well after that deadline.[1] When a party moves to amend a pleading after the deadline set forth in a scheduling order, the moving party must show good cause under Fed. R. Civ. P. 16(b)(4) to modify the scheduling order and also satisfy the standards under Fed. R. Civ. P. 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). If the moving party fails to satisfy Rule 16's good-cause standard, the Court may deny the motion on that basis alone. *Id.* at 1242 ("Because [the moving party] lacked good cause for the delay in amending their complaint, it was within the district court's discretion to deny their motion pursuant to Rule 16(b)(4).").

The good-cause standard under Rule 16(b)(4) is arguably more stringent than the standard under Rule 15(a). *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1197 (10th Cir. 2015). *See also Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018) ("Rule 16(b)(4) is arguably more stringent than Rule 15"). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The Tenth Circuit has held that good cause requires the movant to show that "scheduling order deadlines cannot be met despite the movant's diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988–89 (10th Cir. 2019). *See also* Fed. R. Civ. P. 16 advisory committee's note to the 1983 amendment (stating that good cause exists when a deadline cannot reasonably be met despite a party's due diligence). The moving party must also

---

[1] In its interim scheduling order, the Court set a deadline of December 15, 2025, to file a motion to amend. However, that deadline was set solely for case management purposes and did not constitute a re-setting of the July 19, 2024, motion to amend deadline.

provide an adequate explanation for any delay. *Tesone*, 942 F.3d at 988. At the same time, if a party learns new information through discovery, the good-cause standard may be satisfied. *Gorsuch*, 771 F.3d at 1240.

If the moving party establishes good cause, the Court must then consider whether amendment is appropriate under Rule 15(a). *Pierce as Tr. of Steven Pierce Tr. Dated Apr. 14, 2000 v. State Farm Fire & Cas. Co.*, No. 19-1245-EFM-GEB, 2021 WL 2191036, at *4 (D. Kan. Apr. 13, 2021). Relevant factors include timeliness, prejudice to the opposing party, bad faith, and futility. *Id.* In freely allowing amendment, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Ultimately, whether to modify the scheduling order lies within the Court's sound discretion. *Green v. Blake*, No. 18-2247-CM, 2020 WL 816016, at *2 (D. Kan. Feb. 19, 2020).

## III.    Analysis

The parties devote significant portions of their briefing to disputing the merits of the underlying claims and defenses, including issues that will ultimately be resolved later in the case. The present motion, however, turns on whether Plaintiffs have shown good cause under Rule 16(b)(4) and, if so, whether leave to amend is appropriate under Rule 15(a). To the extent the parties' arguments do not bear on those standards, the Court does not address them here. That stated, the record and briefing provide sufficient information for the Court to evaluate diligence, Rule 16 good cause, and the relevant Rule 15 factors.[2]

---

[2] In addition to the parties' briefing, Plaintiffs requested oral argument on the motion to amend the complaint (via 1/20/2026 email to Chambers). The Court has discretion whether to hold a hearing on any motion filed in this court. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); *see also* D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative.") (emphasis added); *Abrams v. Se. Mun. Bonds Inc.*, 138 F. App'x 88, 96 (10th Cir. 2005) ("A district court's decision whether to conduct hearings in order to resolve motions—even those which are vigorously disputed and may directly

Because Plaintiffs seek leave to amend after the deadline for amending pleadings, the Court first considers whether Plaintiffs have shown good cause. If Plaintiffs establish good cause, the Court then turns to Rule 15(a)(2) and considers whether leave to amend should be granted in light of the relevant factors, including timeliness, prejudice, bad faith, and futility. The Court will also address issues with certain exhibits that are provisionally sealed, as well as whether modifications to the case schedule are appropriate.

### a.  Plaintiffs Have Shown Good Cause Under Rule 16.

As stated above, Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To establish good cause, the moving party must show it could not have met the motion to amend deadline despite "diligent efforts." *Seale v. Peacock*, 32 F.4th 1011, 1030 (10th Cir. 2022). Thus, where a party knew of "the underlying conduct but simply failed to raise [its] claims, ... the claims are barred." *Gorsuch*, 771 F.3d at 1240. By contrast, "Rule 16's good cause requirement may be satisfied ... if a [party] learns new information through discovery or if the underlying law has changed." *Id.*

Here, the Rule 16 "good cause" inquiry focuses primarily on whether the July 19, 2024, motion to amend deadline could reasonably have been met with diligent efforts and whether Plaintiffs moved to amend within a reasonable time after learning new information. Plaintiffs tie their proposed new allegations to information they contend was not reasonably available by the deadline and instead emerged through discovery and later disclosures. In particular, Plaintiffs assert that key documents produced in January 2025 were the first to reveal the factual connections they

---

determine the outcome of the litigation—is reviewed for abuse of discretion."). Here, the issues presented are fully briefed, and the facts relevant to the Rule 16 and Rule 15 analyses are adequately developed in the written record. The Court thus concludes that the briefs on this motion are sufficient to reach its decision. Plaintiffs' request for a hearing is denied.

now seek to plead, including how Ashley Square and the asserted bridge-loan/cross-collateralization issues relate to the distribution methodology.

The Defendant argues Plaintiffs were on notice of Ashley Square-related issues earlier.  It points to a mortgage and security agreement produced on June 24, 2024, and an email produced October 1, 2024 stating Cross Creek was "taking over the Ashley Square note."  *See* Doc. 179 at 7. The Defendant also states that by October 1, 2024, it had produced 16,424 pages of documents, plus 5,435 pages from Burlington Capital Group, which it contends included materials relevant to distribution calculations and Ashley Square.  It also states that it produced an MOU that had information about Ashley Square as early as 2023.  See Doc. 179, at 10.  However, those materials, standing alone, do not necessarily establish that Plaintiffs could reasonably have met the amendment deadline and moved for leave earlier.

The Court is not convinced that the pre-suit correspondence and the 2024 document productions provided Plaintiffs with sufficient information to determine whether an amendment to the pleadings was appropriate.  As Plaintiffs argue, the Defendant's January 2025 production included documents reflecting Cross Creek's liquidation planning and the Defendant's internal analysis of the distribution "waterfall," including materials Plaintiffs describe as a plan of complete liquidation and dissolution and related accounting communications.  Plaintiffs argue these documents were significant because, for the first time, they tied Ashley Square's financing and the asserted bridge-loan/cross-collateralization issues to the liquidation plan and the calculations used to determine the sale distributions.  Plaintiffs maintain that earlier productions referenced Ashley Square and related debt but did not provide this same connection to the distribution methodology they challenge.

The Court also finds it significant that, throughout the period when Plaintiffs were evaluating the significance of Ashley Square, the Defendant took the position that Ashley Square "is

unrelated to Cross Creek and did not affect the calculations for Cross Creek." Doc. 162-3, at 2. That position reasonably bears on what a diligent litigant would have understood from isolated references to Ashley Square in earlier productions and whether Plaintiffs could reasonably have been expected to move to amend based on those references alone. Stated differently, when the responding party maintains that the property identified in production is immaterial to the core calculation at issue, it is reasonable for the requesting party to pursue further discovery to determine whether the information supports a claim and whether a factual nexus exists before seeking amendment.

Against that backdrop, the Court also addresses the period between the January 2025 discovery production and Plaintiffs' December 2025 motion to amend. Although the length of that interval could, in isolation, appear significant, the timing was driven by intervening procedural developments rather than a lack of diligence. In February 2025, the Defendant disclosed a tax-return error that called into question the calculation of the Original Distributions and materially altered the posture of the case. At the March 7, 2025 status conference, the parties and the Court agreed that a ruling on the then-pending motion for judgment on the pleadings was important and that a short stay was appropriate. Plaintiffs also indicated an earlier intent to amend, but the Court and the parties recognized that proceeding with amendment while the dispositive motion remained pending risked mooting that motion and would create unnecessary procedural complications.

After the Court denied the motion for judgment on the pleadings in August 2025, the Defendant advised it intended to amend its tax filings, and the Court entered an interim scheduling order setting deadlines for the AAR and amended distributions before amendment would proceed. Moving to amend before the AAR process was complete risked serial amendments rather than one consolidated amendment incorporating the information ultimately obtained through discovery and the corrective tax/distribution developments. Plaintiffs filed their motion to amend within the

timeframe established by that interim order.  Under these circumstances, the passage of time reflects case-management considerations and intervening developments, not a failure to act diligently.

For these reasons, the Court agrees that the Plaintiffs have shown good cause under Rule 16. The Defendant's counterarguments largely turn on whether Plaintiffs should have known earlier based on the MOU, select discovery productions, or different discovery choices.  But Rule 16 does not require perfect foresight; it asks whether the movant acted diligently under the circumstances and whether the deadline could reasonably have been met.  In this case, Plaintiffs have tied the proposed amendments to specific discovery productions and disclosures occurring after the amendment deadline and have provided an explanation for the timing of their request.  The Court therefore finds Plaintiffs have shown good cause under Rule 16(b)(4).

### b.  Plaintiffs Meet the Rule 15(a) Standards for Leave to Amend.

The Court next proceeds to its analysis under Rule 15(a)(2).  As stated earlier, when a party may no longer amend as a matter of course under Rule 15(a)(1), amendment is permitted "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave [to amend pleadings] when justice so requires."  *Id.*  In freely allowing leave to amend, the court provides litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).  Nonetheless, leave may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment."  *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The party opposing amendment bears the burden to show why leave should not be granted.  *Painter v. Midwest*

*Health, Inc.*, No. 19-2336-DDC-ADM, 2020 WL 5016878, at *3 (D. Kan. Aug. 25, 2020) (citing

*Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)).

The Defendant groups its arguments against amendment into three categories: (1) undue

delay and bad faith; (2) futility; and (3) prejudice.  The Court will first address undue delay, bad faith,

and prejudice together.  It will then address the Defendant's futility arguments.

### i.  Undue Delay, Prejudice, and Bad Faith

The Defendant first argues Plaintiffs exercised undue delay in seeking leave to amend.

Typically, denial is appropriate when the party seeking amendment "has no adequate explanation for

the delay."  *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).  Here, Plaintiffs seek to amend

after the scheduling-order deadline, but the Court has already concluded Plaintiffs have shown good

cause under Rule 16 to modify that deadline.  That conclusion informs—but does not resolve—the

Rule 15 timeliness inquiry.

Here, Plaintiffs have provided a sufficient explanation for the timing of their request.

Plaintiffs tie the proposed amendments to information they contend came to light during discovery

and through later developments after the original pleadings were filed, including the January 2025

production Plaintiffs characterize as revealing details of Cross Creek's liquidation and distribution

calculations, and the February 11, 2025 disclosure regarding a tax-return error that affected the

case's posture and led to a period in which the parties addressed corrective tax filings and related

issues.  Those intervening developments, combined with the pendency of a motion for judgment on

the pleadings and the Court's interim case-management orders governing the December 2025 AAR

and amended distributions, informed when amendment could reasonably proceed as well as the

scope of the proposed amendments.  Under these circumstances, the Court does not find that

Plaintiffs' timing reflects undue delay warranting denial of leave to amend.

By extension, timeliness is closely related to undue prejudice. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). This is particularly significant because undue prejudice is the most important factor in the Rule 15 analysis and requires a showing that amendment would unfairly affect the nonmoving party's ability to prepare its case—for example, by introducing new issues late in the litigation, requiring significant additional discovery, or changing the litigation's nature in a way that cannot reasonably be addressed. *See Minter*, 451 F.3d at 1207-08 ("Rule 15 ... was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.") (quoting *United States v. Hougham*, 364 U.S. 310, 316, 81 S. Ct. 13, 18, 5 L.Ed.2d 8 (1960)).

Here, the Court acknowledges that the proposed amendment expands the factual allegations and may require additional discovery. But the need for additional discovery, standing alone, does not constitute undue prejudice, particularly where the case schedule has already been affected by developments relating to the tax-return issue and where the Court can mitigate any prejudice through reasonable adjustments to remaining deadlines. Moreover, the proposed amendments remain anchored to the same core dispute that has been present since the outset—how the Defendant calculated and distributed proceeds following the sale of the Apartment Complex and related financial and accounting decisions. To the extent the amendments add detail or alternative theories tied to the same transaction and distribution framework, the Court is not persuaded that the Defendant will be unfairly surprised or deprived of a meaningful opportunity to respond.

The Court also considers that the case is not on the eve of trial and that the parties have already engaged in discovery directed toward many of the subjects addressed in the proposed amended pleading, including the sale transaction, the distribution calculations, and communications with accountants. Any incremental prejudice associated with additional targeted discovery can be addressed through a limited reopening of discovery or other schedule modifications, as discussed below.

The Defendant next contends Plaintiffs acted in bad faith or with a dilatory motive. Bad faith under Rule 15 typically requires more than sharp disagreement over the merits; it generally involves evidence that the amendment is sought for an improper purpose, such as to harass, to gain an unfair tactical advantage, or to needlessly increase the cost of litigation. *See Julian v. Clearlink Ins. Agency, LLC*, No. 24-2293-KHV-RES, 2024 WL 4903804, at *3-4 (D. Kan. Nov. 26, 2024). "The burden to establish bad faith rests with the party opposing the motion to amend." *Id.*

The record does not support such a finding here. Plaintiffs seek to expand the factual allegations and add an alternative theory tied to events that occurred or became clearer after the pleadings were filed and during discovery. Plaintiffs' explanation for amendment—namely, that they seek to plead additional facts learned through discovery and to address later developments affecting the distributions at issue—does not reflect an improper purpose on its face. Nor does the timing of the motion, in the context of January 2025 discovery production and subsequent developments, establish that Plaintiffs acted with a dilatory motive. The Court therefore declines to deny amendment on bad-faith grounds. Against this backdrop, the Court evaluates the only remaining argument to deny the motion—futility.

### ii. Futility

The Defendant asserts the Court should deny leave to amend because the proposed amendment is futile. Doc. 179, at 12-13. "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In this context, the court considers whether the amended complaint could withstand a motion to dismiss pursuant to Fed. Civ. R. P. 12(b)(6). *See Stewart v. Dominicis*, No. 24-3058-JWB-ADM, 2025 WL 3511078, at *3 (D. Kan. Dec. 8, 2025). To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

14

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In analyzing whether dismissal is appropriate, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

The Defendant argues amendment would be futile because the proposed amended complaint does not state viable new claims and would be subject to dismissal.  Doc. 179, at 12-13.  In the Defendant's view, the new allegations concerning Ashley Square do not plausibly establish a contractual breach under the Operating Agreement or otherwise supply a cognizable basis for relief.  The Defendant also contends Plaintiffs' allegations regarding the general ledger are futile because the transactions reflected therein were permissible pursuant to the Management Agreement.  It further argues that the proposed amendments are barred by the statute of limitations.

After reviewing Plaintiffs' proposed amendments to their complaint, the Court does not find them clearly futile.  To be clear, the undersigned is not deciding whether the amended claims against the Defendant would ultimately survive a subsequent challenge.  *See Bailey v. Indical Mgmt., LLC*, No. 19-1283-HLT-TJJ, 2020 WL 1151317, at *3 (D. Kan. Mar. 10, 2020) ("This does not mean the amendments will survive a dispositive motion in the future, just that the proposed amendments do not appear clearly frivolous.").  Rather, the court simply finds that defendants have not met the "high bar" of establishing that the amendments are clearly futile.  *See Stewart*, 2025 WL 3511078, at *3 (concluding that the defendants have not met the "high bar" of establishing futility).  This ruling does not preclude the Defendant from renewing its arguments via a motion to dismiss filed in response to the amended complaint.

In the end, the Court is mindful of Rule 15's dictate to freely give leave to amend.  The Defendant has not met its burden to show undue delay, undue prejudice, or bad faith.  Nor are Plaintiffs' proposed claims clearly futile.  Thus, the Court exercises its discretion to grant Plaintiffs

leave to file an amended complaint.  Plaintiffs are directed to file their amended complaint, in the same form as attached to the motion by **February 6, 2026.**

## IV. Motions to Seal/Redact

Plaintiffs filed three exhibits provisionally under seal: Exhibits 17, 24, and 26.  Plaintiffs also filed a redacted version of their memorandum in support of the motion to amend on the public docket, while provisionally filing an unredacted version of the memorandum.  The Defendant moves to maintain Exhibit 24 under seal.  Doc. 170.  Non-party Greystone Housing Impact Investors LP ("GHII") entered the case and moved to redact portions of Exhibit 17.  GHII emailed its proposed redactions to chambers consistent with D. Kan. Rule 5.4.2(c).  The Court will first address GHII's motion and then move to the Defendant's motion.

### a.  GHII's Proposed Redactions to Exhibit 17 are Appropriate.

GHII, a non-party that produced documents in response to Plaintiffs' third-party subpoena, moves (unopposed) for leave under D. Kan. Rule 5.4.2(c) to file a redacted version of Exhibit 17 to Plaintiffs' Motion to Amend.[3]  *See* Doc. 177.  Exhibit 17 is an internal Burlington Capital memorandum dated December 31, 2017, and GHII asserts it contains confidential, proprietary business and commercial information relating to the 2017 sale of the Ashley Square Apartments.  According to GHII, public disclosure would place it at a competitive disadvantage.  It seeks to redact portions of the exhibit that may cause competitive harm.  The motion states that neither Plaintiffs nor the Defendant opposes the proposed redactions and asks the Court to direct the Clerk to file the redacted Exhibit 17 on the public docket.

Following its review of the proposed redactions, the Court concludes that the information merits protection and that the redacted material could be used by competitors to place GHII at a

---

[3] GHII withdrew its request for confidential treatment of Exhibit 26 and does not object to that Exhibit being filed publicly.

competitive disadvantage.  Further, the proposed redactions are narrowly tailored and shield only proprietary or irrelevant business analysis, none of which bear on the issues in the motion to amend. *See United States ex rel. Schroeder v. Hutchinson Reg'l Med. Ctr.*, 777 F. Supp. 3d 1256, 1288-89 (D. Kan. 2025); *see also Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1162, n.8 (10th Cir. 2016) ("[T]he public's interest in access to judicial records is lessened when the contents are not used to determine the litigant's substantive legal rights.") (alteration and internal quotation marks omitted).  The Court thus grants GHII's Motion to Redact (Doc. 177).  The Court directs the Clerk to remove the provisional designation from Exhibit 17 (docketed at Doc. 165-1) leaving it under seal.  GHII is directed to file a redacted, public version consistent with the proposed redactions previously sent to the Court by **February 6, 2026**.

Further, given that GHII withdrew its request that Exhibit 26 be subject to confidential treatment (and no other party moved to seal/redact that exhibit), the Court directs the Clerk to unseal Exhibit 26 (docketed at 165-3).

### b.  The Defendant Has Not Met Its Burden to Seal Exhibit 24.

The Defendant moves under D. Kan. Rule 5.4.2(c) to permanently seal Plaintiffs' Exhibit 24, filed in support of Plaintiffs' Motion to Amend.  *See* Doc. 170.  Exhibit 24 consists of excerpts from Cross Creek's general ledger for the period July 1, 2022 through December 1, 2022, which the Defendant characterizes as confidential, non-public business information maintained for entities it manages and not required by law to be publicly disclosed.  The Defendant asserts that the ledger is a detailed, transaction-by-transaction record—including payor and payee identities, amounts, dates, descriptions, and internal account codes—and that public disclosure could permit competitors or other stakeholders to deduce confidential business practices, contracts, pricing, revenues and expenses, accounts payable and receivable, and other proprietary information.  The Defendant further notes that the ledger identifies tenants and rent payments.  Finally, it contends the public

interest in access to this information is minimal compared to the risk of harm and requests an order permanently sealing Exhibit 24.

Plaintiffs oppose the motion and ask the Court to unseal the exhibit. They contend the Defendant has not met its "heavy burden" under D. Kan. Rule 5.4.2(c) to justify sealing the exhibit in its entirety. Doc. 176, at 3. In Plaintiffs' view, Exhibit 24 is a business record of the Company (now dissolved) and contains nothing proprietary, and Plaintiffs—as former owners—were entitled to access it without confidentiality restrictions. The asserted harms, they argue, are speculative and unsupported, particularly given that the ledger excerpts are from 2022. Plaintiffs further contend the ledger is pertinent to the motion to amend because it supports their allegations of improper payments. Finally, Plaintiffs argue the motion is procedurally deficient under Rule 5.4.2(c), including for failing to identify a clearly defined and serious injury. Plaintiffs state they would not oppose narrowly redacting tenant names (and only tenant names) but otherwise request that Exhibit 24 be unsealed.

"Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978)). The right to access judicial records is an important aspect of preserving the integrity of the judicial process. *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). However, the right is not absolute and the presumption of public access "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Mann*, 477 F.3d at 1149 (citing *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

There is a strong presumption that judicial records will not be sealed or redacted. *Id.* "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.* "[T]he public's interest in access to judicial records is lessened when the contents are not used to determine the litigant's substantive legal rights." *Deherrera v.*

*Decker Truck Line, Inc.*, 820 F.3d 1147, 1162 n.8 (10th Cir. 2016) (internal citations omitted).  The court has discretion when determining whether to seal judicial records.  *Hickey*, 767 F.2d at 708.

The Tenth Circuit's standard for filing documents under seal or filing documents with redactions is incorporated in this court's local rules.  *Bad Rhino Games, LLC v. Turn Me Up Games, Inc.*, No. 23-2303-JWB, 2024 WL 5008619, at *1 (D. Kan. Dec. 5, 2024).  Under D. Kan. Rule 5.4.2(c), a motion to seal or redact must include: "(1) a description of the specific portions of the document, which must be narrowly tailored to the asserted confidentiality interest; (2) the confidentiality interest to be protected and why such interest outweighs the presumption of public access; (3) a clearly defined and serious injury that would result in the absence of restricting public access; (4) why no lesser alternative is practicable or why restricting public access will adequately protect the confidentiality interest in question; and (5) the extent to which the motion is opposed or unopposed."  *Q Link Wireless, LLC v. T-Mobile USA, Inc.*, No. 25-2042-JWB-RES, 2025 WL 1548123, at *1 (D. Kan. May 30, 2025).

Here, the Defendant moves to permanently seal Plaintiffs' Exhibit 24, excerpts of the Company's general ledger for July 1, 2022 through December 1, 2022, asserting the ledger reflects detailed transactional information that competitors could use to deduce pricing, expenses, and other business practices, and further identifying tenant names and rent amounts.  But even accepting that certain limited portions of the ledger implicate legitimate confidentiality or privacy concerns, the requested relief is broader than necessary on the current showing.

As to the Defendant's competitive-harm rationale, the motion relies largely on generalized descriptions of what a competitor "could" infer from a ledger and broad assertions of harm to competitive standing.  The competing interest must not be speculative, and the Defendant needs to articulate "a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process."  *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB,

2020 WL 6742787, at *1 (D. Kan. Nov. 17, 2020). The filings do not identify with specificity what "clearly defined and serious injury" would result from public filing of this particular 2022 ledger excerpt, nor do they explain why narrower alternatives would be inadequate as Rule 5.4.2(c) requires. On this record, the Court is not persuaded that permanently sealing the entire exhibit (or redacting all transactional dollar amounts) is warranted.

That said, the Court agrees that tenant identifiers warrant protection. Plaintiffs themselves propose narrowly redacting tenant names, and the Court finds that approach appropriately balances the public's right of access with the privacy interests of non-parties whose identifying information appears in the ledger. Accordingly, the Court denies the Defendant's request to permanently seal Exhibit 24 in full. The Court will instead permit the Plaintiffs to file Exhibit 24 publicly with tenant names redacted. To the extent the Defendant alternatively seeks redaction of all dollar amounts, the Court finds that request is not narrowly tailored on the present showing and is therefore denied. The Clerk is directed to remove the provisional designation from Exhibit 24 (docketed at Doc. 165-2). The Plaintiffs are directed to file in the public record Exhibit 24, with only tenant names redacted, by **February 6, 2026.**

### c. Plaintiffs' Memorandum in Support of the Motion to Amend

Plaintiffs provisionally filed an unredacted version of their memorandum in support of the motion to amend under seal. *See* Doc. 165. No party has moved to maintain that memorandum under seal, and the time to do so has passed. *See* D. Kan. Rule 5.4.2(c). Accordingly, because there is no pending request to maintain the filing under seal or to otherwise redact it, the Court directs the Clerk to unseal the entry.

## V. Amending the Scheduling Order

There is only one remaining issue for the Court to address: the case schedule. Plaintiffs request the Court to "establish renewed discovery deadlines, including for experts." Doc. 163, at 15.

The Defendant is not opposed to a limited reopening of discovery solely to allow the parties to complete the depositions that were already noticed before the stay was implemented and to conduct discovery on the new allegations. However, the Defendant opposes a broad reopening of discovery or reinstatement of deadlines that have already passed, such as expert disclosures. *See* Doc. 179, at 15.

Given the posture of the case and that the parties have not conferred on any case schedule, the Court will not make any final determinations at this time. Indeed, even the Defendant concedes that it "has not yet determined the full extent of additional discovery or other courses of action it may seek if Plaintiffs' Motion is granted." Doc. 179, at 15 n.18. It would be premature for the Court to set a case schedule at this time.

Under the circumstances, the Court orders the parties to confer and submit a proposed scheduling order and joint status report by **February 18, 2026**. The joint status report shall identify any outstanding issues and summarize all remaining discovery to be completed. The parties may note any points of disagreement in the proposed scheduling order and include a brief explanation of their respective positions. Given the length of time this case has been pending and the amount of discovery already conducted, the Court is not inclined to enter a lengthy schedule. The parties should take this guidance into account when drafting their proposed schedule. The Court sets an in-person scheduling conference for **February 25, 2026, at 10:00 a.m.** The hearing will take place at the Wichita federal courthouse in courtroom 406.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion for leave to file an amended complaint (Doc. 161) is **GRANTED**. Plaintiffs are directed to file their amended complaint, in the same form attached to the motion, by **February 6, 2026.**

**IT IS FURTHER ORDERED THAT** Greystone Housing Impact Investors LP's motion to redact (Doc. 177) is **GRANTED**. The Court directs the Clerk to unseal Exhibit 26 (docketed at

Doc. 165-3) and to remove the provisional designation from Exhibit 17 (docketed at Doc. 165-1) leaving it under seal.  GHII is directed to file a redacted, public version of Exhibit 17 consistent with the proposed redactions previously sent to the Court by **February 6, 2026**.

**IT IS FURTHER ORDERED THAT** the Defendant's motion to seal (Doc. 170) is **GRANTED IN PART and DENIED IN PART.**  The Court directs the Clerk to remove the provisional designation from Exhibit 24 (docketed at Doc. 165-2).  The Plaintiffs are directed to file in the public record Exhibit 24, with only tenant names redacted, by **February 6, 2026**.

**IT IS FURTHER ORDERED THAT** the Clerk unseal Plaintiffs' memorandum in support of the motion to amend (docketed at Doc. 165).

**IT IS FURTHER ORDERED THAT** the parties confer and submit a proposed scheduling order and joint status report by **February 18, 2026**.  The joint status report shall identify any outstanding issues and summarize all remaining discovery to be completed.  The parties may note any points of disagreement in the proposed scheduling order and include a brief explanation of their respective positions.  Given the length of time this case has been pending and the amount of discovery already conducted, the Court is not inclined to enter a lengthy schedule.  The parties should take this guidance into account when drafting their proposed schedule.  The Court sets an in-person scheduling conference for **February 25, 2026, at 10:00 a.m.**[4]  The hearing will take place at the Wichita federal courthouse in courtroom 406.

**IT IS SO ORDERED.**

Dated January 29, 2026, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge

---

[4] If the parties' proposed schedule is reasonable and if they are largely in agreement on the scope of discovery and deadlines, the Court may convert the in person scheduling conference to telephone.